# STATE OF CONNECTICUT *v.* GERALD MOYHER
## (AC 25746)

Lavery, C. J., and McLachlan and Peters, Js.

Argued October 18—officially released December 13, 2005

*David E. Crow, Jr.,* for the appellant (defendant).

*Joan K. Willin,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Marc G. Ramia,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. This criminal appeal arises out of an altercation between the defendant and three peace officers that occurred in a private home. The altercation resulted in the defendant's conviction for injuring and obstructing a peace officer in the performance of his official duties. The defendant's principal claim on appeal is that the trial court improperly permitted the state to introduce evidence about the circumstances that led to the warrantless entry of the officers into the home. We affirm the judgment of the trial court.

The state filed a two count information against the defendant, Gerald Moyher. Count one charged the defendant with having committed the crime of assaulting a peace officer acting in the performance of his duties in violation of General Statutes § 53a-167c. Count two charged him with having committed the crime of interfering with an officer in the performance of his duties in violation of General Statutes § 53a-167a. The jury found the defendant guilty as charged. The trial court accepted the verdict and sentenced the defendant to a term of four years of imprisonment followed by six years of parole supervision, with special conditions.

The jury reasonably could have found the following. The defendant shared a home at 7 Hazel Terrace in Woodbridge with Doreen Storer and her son, Christopher Donahue. On June 13, 2003, in an area adjacent to

the home, Sergeant Edward Thomas of the Woodbridge police department arrested Donahue on a charge of cruelty to animals. The charge arose out of Donahue's alleged mistreatment of a dog owned by the defendant. Donahue paged Storer, who, accompanied by the defendant, arrived at the scene some fifteen minutes later. In the meantime, Thomas had summoned an animal control officer, who had placed the dog in her car. Storer and the defendant then engaged in a heated verbal confrontation with Thomas, the animal control officer and ultimately with each other.

Storer and the defendant then returned to their home and were heard yelling and screaming at each other. Fearing for Storer's safety, Thomas called another officer for assistance and entered the home. The defendant ordered Thomas to leave and pushed Storer into another room. When Thomas stood his ground, the defendant pushed him backwards and injured him in so doing. With difficulty, the defendant was subdued and handcuffed by Thomas and his fellow officer.

The defendant does not challenge the sufficiency of the evidence to sustain his conviction. He argues instead that the jury's verdict should be set aside because the jury improperly heard evidence about his relationship with Storer. Emphasizing that Thomas entered the home without a warrant, the defendant maintains that Thomas should not have been permitted to testify about (1) prior domestic incidents at the defendant's home or (2) his observations after entry into the defendant's home. We are not persuaded.

I

The defendant's principal argument for reversal is that the trial court improperly permitted Thomas to testify that there had been prior domestic incidents at the residence at 7 Hazel Terrace. At trial, the defendant objected to the admission of this testimony. The issue

before us is whether the court's decision was an abuse of its discretion.

Thomas testified about prior incidents of domestic disputes at 7 Hazel Terrace on redirect examination. Prior to this testimony, on cross-examination, the defendant had inquired into the extent of Thomas' experience with problems of domestic abuse. In the course of this cross-examination, Thomas had acknowledged that he had not previously followed disputing parties into their home after witnessing a domestic dispute on adjoining property. Thereafter, on redirect, the prosecutor asked whether the officer might have had some idea of "what you're going to come into?" Over objection, Thomas answered: "There was a history at the residence." Again over objection, Thomas went on to elaborate that he believed it proper to enter a home if he had concerns about someone's personal safety. He identified Storer as such a person.[1] After his entry into the home, he saw the defendant push Storer into another room.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context. . . .

---

[1] On direct examination, Thomas had testified that he detected the smell of alcohol on the breath of both the defendant and Storer when they first appeared at the scene.

"In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence . . . . Accordingly, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal. . . . We will not overturn the trial court's decision unless the trial court has abused its discretion." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 822, 882 A.2d 604 (2005).

In this case, the defendant claims that the admitted evidence was so prejudicial that its admission was an abuse of the court's discretion. In his view, if the prior domestic incidents did not involve his own conduct, they were irrelevant, and, if they did involve him, they were unfairly prejudicial.

We are not persuaded.[2] Once the defendant had opened the door to the issue of Thomas' experience with domestic disputes, the trial court properly permitted the prosecutor to explore the justification for the entry of the peace officers into the defendant's home. The court minimized the risk of prejudice by directing the prosecutor to refrain from inquiring into any specific acts of prior misconduct by the defendant, and the prosecutor followed this instruction. Considering this record in its entirety, we conclude that the court did not abuse its discretion.

[2] As the state notes, the defendant did not object to the testimony of Officer George Tamborini, who assisted Thomas at the scene of the altercation. That officer also testified that he was familiar with the address 7 Hazel Terrace because there had been other complaints about Storer and her son.

## II

The defendant's alternate argument for reversal focuses on the fact that the three peace officers, Thomas, Tamborini and animal control officer Judy Retting, entered the home without first having obtained a search warrant. The defendant claims that, because of this warrantless entry, the testimony of these three officers should have been excluded because it was constitutionally flawed. Although no such objection to the officers' testimony was made at trial, the defendant claims that he is entitled to appellate review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

We decline to consider this argument on its merits because we lack the record to do so. An adequate record is essential to *Golding* review. Id.

It is common ground that "[t]he fourth amendment does not bar police officers, when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that a person within is in need of immediate aid. . . . The extent of the search is limited . . . [to] a prompt warrantless search of the area to see if there are other victims or if [a perpetrator] is still on the premises. . . . The police may seize any evidence that is in plain view during the course of the search pursuant to the legitimate emergency activities. . . . Such a search is strictly circumscribed by the emergency which serves to justify it . . . and cannot be used to support a general exploratory search." (Internal quotation marks omitted.) *State* v. *Blades*, 225 Conn. 609, 618, 626 A.2d 273 (1993). To justify a warrantless entry, the state must prove that "a reasonable police officer would have believed that such an emergency existed. . . . The reasonableness of a police officer's determination that an emergency exists is evaluated on the basis of facts

known at the time of entry." (Citations omitted; internal quotation marks omitted.) Id., 618–19.

If the defendant had filed a motion to suppress based on the officers' warrantless entry, the prosecutor would have had an opportunity to present factual evidence in support of the state's contention that the officers were confronted with emergency circumstances that justified their immediate entry into the home. Specifically, both direct and indirect evidence would have been admissible to establish that it was reasonable for the officers to be concerned that the defendant would injure Storer. See *State* v. *Colon*, 272 Conn. 106, 147, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

In the absence of a hearing of record, it would be pure speculation for us to decide whether the defendant's constitutional rights were violated by the three peace officers who entered his home without a warrant. It follows that it would be improper for us to overturn the defendant's conviction on this ground.

The judgment is affirmed.

In this opinion the other judges concurred.